**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective
Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONOVAN EASY, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>                Plaintiff,<br><br>           v.<br><br>SERVICES FOR THE UNDERSERVED, INC.,<br><br>              Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff DONOVAN EASY ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant SERVICES FOR THE UNDERSERVED, INC. ("Defendant"), and states the following:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to time-shaving; (2) liquidated damages; and (3) attorney's fees and costs.

2.      Plaintiff further alleges that, pursuant to  New York Labor Law ("NYLL"), that

he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to timeshaving;  (2) statutory penalties, (3) liquidated damages, and (4) attorney's fees and costs.

3.      Plaintiff further alleges that, pursuant to the FLSA and NYLL, he was unlawfully retaliated against after asserting his rights under the FLSA. Plaintiff is entitled to recover from Defendant: (1) economic damages, (2) punitive damages, and (3) attorney's fees and costs.

4.      Defendant SERVICES FOR THE UNDERSERVED, INC. is a 501(c)(3) not-for-profit organization serving people with disabilities, veterans, and the homeless.  While Defendant is a not-for-profit, Defendant remains an employer pursuant to the FLSA and NYLL and their regulations.  Defendant is an institution, which is "primarily engaged" in the care of the at-need individuals with "more than 50% of [its] income is attributable to…providing domiciliary care to individuals who reside on the premises and who, if suffering from physical or mental infirmity or sickness of any kind, will require only general treatment or observation of a less critical nature than that provided by a hospital." *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449 (S.D.N.Y. 2006) (quoting the Department of Labor Wage and Hour Divisions Field Operations Handbook § 12).  Plaintiff himself worked in a facility caring for people with mental disabilities.

5.      Plaintiff, putative FLSA Collective Plaintiffs, and Class members, who are all current and former direct support professionals of Defendant, are all victims of Defendant's underpayment of wages, including overtime. Defendant instituted a policy that resulted in the underpayment of all Class members. Specifically, Defendant created a policy of (i) failing to compensate meal breaks, which were interrupted and employees were forced to work through,

and (ii) failing to compensate for all employee work time on days where Defendants' time keeping system malfunctioned. As a consequence of these policies, employees were not paid for all their hours of work.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, and 1337, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because Defendant resides and is headquartered within this District and, therefore, the witnesses, policies, and procedures giving rise to this Complaint emanated from this District.

## PARTIES

8. Plaintiff is a resident of Philadelphia County, Pennsylvania.

9. Defendant SERVICES FOR THE UNDERSERVED, INC. is a domestic not-for-profit corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 463 Seventh Avenue, 17th Floor, New York, NY 10018.

10. Defendant owns and manages various locations across New York that provides services to those with developmental disabilities, the homeless, veterans, and behavioral disabilities.[1]

11. At all relevant times, Defendant was and are "enterprise[s] engaged in commerce" within the meaning of the FLSA.

12. Plaintiff have fulfilled all conditions precedent to the institution of this action

---

[1] *See* https://sus.org/

and/or such conditions have been waived.

13.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14.     Plaintiff brings claims for relief as a collective action pursuant to FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt current and former direct support professionals, including program specialists, home aides, home attendants, and caregivers, among others, employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

15.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure to compensate wages for all hours worked, including overtime, due to a policy of timeshaving.  The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

16.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail, text and email.

## RULE 23 CLASS ALLEGATIONS

17.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt current and former direct support professionals,

including program specialists, home aides, home attendants, and caregivers, among others, employed by Defendant on or after the date that is six (6) years and 228 days (pursuant to State tolling during the COVID pandemic), prior to the filing of the Complaint in this case (the "Class").

18.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

19.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is presently based are within the sole control of Defendant. There is no doubt that there are more than forty (40) members of the Class.

20.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendant, including: (i) failing to pay wages, including overtime, due to time-shaving, (ii) failing to provide earning statements reflecting all hours worked at each pay period, and (iii) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the New York labor Law. Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses,

injuries and damages arising from the same unlawful policies, practices and procedures.

21.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

22.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is

empowered to, fashion methods to efficiently manage this action as a class action.

23.     Defendant and other employers throughout the United States violate applicable state wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendant employed Plaintiff and the Class within the meaning of the NYLL;

b.     What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not properly pay Plaintiff and the Class members;

c.     What were the programs, procedures, and/or systems Defendant instructed Plaintiff and Class members to utilize when clocking-in and clocking-out to Defendant's system;

d.     At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiff and the Class members for their work;

e.     Whether Defendant properly notified Plaintiff and Class members of hourly rate and overtime rate;

f.     Whether Defendant had a policy, practice, or protocol of calculating and compensating work time of Plaintiff and Class members;

g.     Whether Defendant properly compensated Plaintiff and Class members for all hours worked, including overtime hours;

h.     Whether Defendant provided proper wage statements to Plaintiff and Class members with information required to be provided on wage statements under the New York Labor Law; and

i.     Whether Defendant provided proper wage notice, at date of hiring and annually thereafter, to Plaintiff and Class members, per requirements of the New York Labor Law.

## STATEMENT OF FACTS

25.    On or around May 5, 2009, Plaintiff was hired by Defendant to work as a Program Specialist at 3316 Avenue J, Brooklyn, NY 11210. Plaintiff's employment with Defendant was terminated around May 2024.

26.    As a Program Specialist, Plaintiff's primary duties included providing aid and assisting with the day-to-day of residents living at 3316 Avenue J, who suffered from mental disabilities.

27.    Throughout Plaintiff's employment with Defendant, Plaintiff was scheduled to work on Mondays, Tuesdays, Fridays, and Saturdays from 11:00 p.m. to 7:30 a.m. Additionally, Plaintiff was scheduled to work on Sundays from 7:00 a.m. to 3:30 p.m. In total, Plaintiff was scheduled to work forty-two-and-one-half (42.5) hours each week. Plaintiff would work his schedule shift plus additional time as detailed below, which went uncompensated. FLSA Plaintiffs and Class members were scheduled to work similar hours and worked similar additional hours in excess of those scheduled hours, which went uncompensated.

28.    Throughout Plaintiff 's employment with Defendant, Plaintiff was compensated at a rate of seventeen dollars ($17) per hour. At all times Plaintiff was paid through bi-weekly checks. FLSA Plaintiffs and Class members were paid at similar rates and frequency.

29.    At all times, Plaintiff, FLSA Collective Plaintiffs, and Class members performed work for which they were not compensated at locations owned and operated by Defendant.

30.    Plaintiff, FLSA Collective Plaintiffs, and Class members worked through their lunch on a daily basis, but Defendant would selectively choose to compensate work conducted during employees' meal breaks. Plaintiff, FLSA Collective Plaintiffs, and Class members would only be compensated for less than one half of their meal breaks. For Plaintiff, who worked five

shifts in a week, this meant a failure to compensate one-and-one-half (1.5) overtime hours for each week worked.

31.    Defendant implemented a time-keeping software prone to system-wide malfunctions and shut downs.  Approximately once a week, Defendant's time-keeping system would be inoperable, and employees would be paid *exactly* seven-and-one-half-hour (7.5) hours – eight (8) hours minus a half (0.5) hour meal break – for their shifts.  Plaintiff, FLSA Collective Plaintiffs, and Class members who all regularly worked over seven-and-one-half (7.5) hour per shift would be shorted on their compensation due to this issue at least once a week.  For Plaintiff, this meant a failure to compensate one-half (0.5) hour of overtime for each week worked.

32.    As a consequence of Defendant's policies, Plaintiff was not compensated for at least two (2) hours of overtime per week of work. FLSA Collective Plaintiffs and Class members were similarly deprived full compensation for all hours worked, including overtime hours.

33.    Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class members on a timely basis pursuant to NYLL.

34.    Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class members for all earned wages pursuant to NYLL or the FLSA.

35.    Defendant knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members the proper overtime rate for all hours worked in excess of forty (40) in each workweek.

36.    Defendant knew that Plaintiff worked for five (5) days a week, as Defendant was the ones to require such work. Defendant knew Plaintiff, FLSA Collective Plaintiffs, and Class members were required to work through meal breaks as they were the ones requiring such work

and they were not compensating employees for this work. Further, Defendant knew that Plaintiff worked over forty (40) hours per week, as Defendant was the one to create the overtime work. Defendant therefore knew that any failure to pay wages would also include the failure to pay overtime wages.

***Plaintiff's and Class Member's Wage Statement and Notice Claims***:

37.     Defendant never provided Plaintiff and Class members with wages notices at hiring, as required by New York Lab. Law § 195(1).

38.     Plaintiff and Class members likewise did not receive proper wage statements from Defendant, as required under NYLL. The checks and/or cash payments that were disbursed to Plaintiff and Class members were accompanied by nothing more than the amount paid to Plaintiff, the form of payment, and the week the payment was for. The payments do not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages as required by New York Lab. Law § 195(3).

39.     Therefore, Defendant directly violated the Work Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendant knowingly and willfully operated their business with a policy of not providing wage notices and proper wage statements to Plaintiff and Class members.

40.     In failing to provide proper wage statements and notices, Defendant jas failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of

employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

41.    Had Defendant provided Plaintiff and Class members with wage statements containing a detailed breakdown of Plaintiff's regular and overtime hours and listing Plaintiff's regular and overtime rates, as required under NYLL § 195(3), it would have been self-evident that Plaintiff was being underpaid.

42.    Faced with this undeniable proof of their unlawful wage practices, Defendant would have had to either (a) increase Plaintiff's wages to the legally required amount or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiff was underpaid, which would readily inculpate Defendant in court. Either possibility would have allowed Plaintiff to more effectively vindicate his rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

43.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

44.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

45.    Because Defendant did not produce proper wage statements containing the actual wages to which Plaintiff was entitled (and the proper deductions), Defendant could not report to the IRS and Social Security Administration, through proper W-2s, Plaintiff's proper earnings for

the year, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[2]

46.     The effect of not reporting or underreporting wages on an employees' W-2 was, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

47.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

---

[2] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

48.     Here, it is clear that Defendant's failure to provide Plaintiff and Class members with proper wage statements entailed "concrete, downstream consequences" involving monetary injury, because the direct effect was to reduce Plaintiff and Class members' entitlement to social security.

49.     Courts agree that the misreporting of earnings constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

50.     The case at bar is somewhat different from *Coward* inasmuch as Defendant actually underpaid Plaintiff and other employees, rather than merely misreporting their income. But this

distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendant reported, or failed to report, their income, which was in turn caused by the absence of legally compliant wage statements. That is why "Plaintiff[] [has] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

51.    Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

52.    Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendant sent either failed to send a W-2 to the IRS or sent a W-2 that underreported Plaintiff's true earnings. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)). In either case, this was the result of Defendant's failure to issue legally compliant wage statements.

### *Plaintiff's Individual Retaliation Claims*

53.    Defendant maintained a scheduling policy that failed to compensate employees for time spent waiting for their relief.

54.    On or around April 23, 2024, Plaintiff complained about Defendant's failure to pay for all his hours of work and of Defendant's management. Rather than acknowledging and remediating the issue, Defendant baselessly accused Plaintiff of misconduct, which resulted in his termination.

55.     Specifically, after he made known to management of his complaints regarding their improper wage policies, management accused Plaintiff of misconduct as a pretext to justify his retaliatory termination.

56.     This false accusation resulted in Plaintiff's termination in early May 2024.

57.     Plaintiff retained Lee Litigation Group, PLLC to represent her in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

**(brought on behalf of a FLSA Collective)**

58.     Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

59.     At all relevant times, Defendant was and continues to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

60.     At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

61.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.

62.     At all relevant times, Defendant had a policy and practice that failed to pay overtime premiums at the statutory rate of time of one and one-half times the normal hourly rate to Plaintiff and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

63.     At all relevant times, Defendant had a policy and practice that failed to pay proper wages, including overtime wages, for all hours worked to Plaintiff and FLSA Collective Plaintiffs due to a practice of timeshaving, in violation of the FLSA.

64.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

65.     Defendant knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages when Defendant knew or should have known such was due.

66.     Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

67.     As a direct and proximate result of Defendant's willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

68.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, plus an equal amount as liquidated damages.

69.     Plaintiff and FLSA Collective Plaintiffs is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATION OF NEW YORK LABOR LAW**

**(brought on behalf of a Rule 23 Class)**

70.     Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

71.     At all relevant times, Plaintiff and Class members were employed by Defendant within the meaning of the New York Labor Law §§ 2 and 651.

72.     Defendant knowingly and willfully violated Plaintiff's and Class members' rights by failing to pay wages, including overtime wages, for all hours worked.  This failure included a failure to compensate all hours excess of forty (40) per workweek at the proper overtime rate that is an extra 1/2 of the regular rate.

73.     Defendant knowingly and willfully failed to pay Plaintiff and Class members proper wages, including overtime wages, due to timeshaving in violation of the NYLL

74.     Defendant knowingly and willfully failed to pay Plaintiff and Class members  on a timely basis in violation of the NYLL.

75.     Defendant knowingly and willfully failed to provide Plaintiff and Class members with proper wage and hour notices as required under the NYLL.

76.     Defendant knowingly and willfully failed to provide Plaintiff and Class members with proper wage statements as required under the NYLL.

77.     Due to Defendant's NYLL violations, Plaintiff and Class members are entitled to recover from Defendant, unpaid wages, including overtime, due to timeshaving, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## RETALIATION UNDER THE FAIR LABOR STANDARD ACT

### (brought on behalf of himself)

78.     Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

79.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of FLSA, and was a person covered by and intended to benefit from the provisions of FLSA.

80.     Section 15(a)(3) of the FLSA provides that it is a violation for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."

81.     As alleged herein, Defendant discriminated against Plaintiff after he complained to Defendant regarding their improper wage practices. Defendant retaliated against Plaintiff by manufacturing a baseless accusation against Plaintiff that ultimately resulted in his termination.

82.     Defendant's retaliatory conduct violated Section 15(a)(3) and Plaintiff's termination was willful.

83.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees and costs, as provided for under the FLSA.

**COUNT IV**

**RETALIATION UNDER THE NEW YORK LABOR LAW**

**(brought on behalf of himself)**

84.     Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

85.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

86.     Defendant willfully violated the NYLL by retaliating against Plaintiff causing him to be terminated shortly after he complained about Defendant's wage practices.

87.     Defendant's actions constituted a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner. . . . (emphasis added).

88.     As alleged herein, Plaintiff complained to Defendant regarding their improper wage practices.

89.     In response, Defendant manufactured an accusation that eventually lead to Plaintiff's termination in violation of Section 215(a) and the resulting termination was willful.

90.     As a direct and proximate result of Defendant's willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest,

attorney's fees and costs, as provided for under the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due to unpaid hours of work, under the FLSA and NYLL;

d. An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay compensation for all hours worked per workweek, pursuant to the FLSA and NYLL;

e. An award of back pay, compensatory damages, and punitive damages due under the NYLL and FLSA for unlawful retaliation;

f. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

h. Designation of this action as a class action pursuant to F.R.C.P. 23;

i. Designation of Plaintiff as Class representatives; and

j. Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 1, 2024

Respectfully submitted,

By:  */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*